## PARKER v. PARKER.

### No. 4062.

Court of Civil Appeals of Texas. Beaumont.

Nov. 5, 1942.

Crawford & Crawford, of Conroe, for appellant.

A. W. Morris, of Conroe, for appellee.

O'QUINN, Justice.

Appellee, Mrs. Freda Parker as plaintiff, recovered judgment of divorce against appellant, her husband J. B. Parker, with custody of their three year old son, with an order of $10 per month for the child's support.

For grounds of divorce, appellee alleged "that for about one year previous to the said separation, the defendant began a constant association with various other women and in this connection plaintiff would show unto the Court that the defendant was a truck driver by occupation and would be away from home on long trips upon numerous occasions and would inform this plaintiff, both prior and subsequent to such trips, that he would and had taken women with him upon such trips and that upon many occasions he informed plaintiff that he no longer cared for her but desired the association and company of these other women with whom he was constantly associated, and such conduct on the part of the defendant has caused their further living together insupportable."

In support of her petition, appellee testified that she and appellant were married about the 24th day of December, 1937, and that they separated about the 10th of September, 1940 (Q. & A. reduced to narrative):

"I separated from my husband because he could not stay away from the other women. He told me that he was associating with other women and preferred their company to mine. He contributed nothing to my support after we separated; he gave the baby a few nickels; he never made any monthly contribution. All the time that we were married he told me that he was keeping company with these other women. While we were married, and he had the job before we were married, he was a truck driver and would be gone away from home on long trips. He told me in the presence of my aunt, Mrs. Cochran, that he was having to give some of his salary to other women; he said he was going to have to cut my allowance and give it to some other woman; that was before

I left him. His statement to me about his association with other women, and that he cared for them more than he did for me, hurt me, but there was nothing I could do about it. That was the reason I left him. I left him on account of the statements he made to me about his association with other women. He never did admit to me that he had immoral relations with them. He said he had them on the truck with him and carried them with him back and forth on his trips. He never did give me their names, I was not able to find out their names. I don't know anything about him and the other women except what he told me. He brought one of the women down to see the baby when it was two months old. I knew her name. He went with her many times; she was a young woman about 25 years old and he was a young man. I never did see him take any woman with him in his truck. He told me that he was going to take with him on one of his trips the woman he brought out to see the baby. He brought this woman out to my house and I know her name. I don't know whether she was married or not; the last time I heard of her she wasn't married; the last time he brought her out to my house she was married. I objected to him bringing this woman to my house. Since we separated I have seen him with two or three different women, riding around town together. After I filed this suit my husband wanted me back, but he would not promise that he would not take other women on the truck with him. The only way I had to find out about him and the other women was what he told me. At first he gave me $10.00 a week; then he cut it down to $8.00 a week; then he cut it down to $6.00 a week. I heard him tell my aunt that he would have to cut down more because he had to give his money to other women; that was before I separated from him."

Appellant testified as a witness in the case in his own behalf. He did not deny that he told his wife that he took other women with him on his truck trips.

On the pleadings and proof, as a part of his conclusions of fact and law, the court found: "I further find that plaintiff and defendant were legally married on or about the 24th day of Dec. 1937 in Montgomery County, Texas, and continued to live and co-habit together as husband and wife until on or about the 10th day of Sept. 1940, when, on account of the harsh and cruel treatment testified to by plaintiff in said cause, rendered their living together insupportable."

■ We overrule appellant's proposition that the pleadings and proof were insufficient to support the judgment.

■ Under the provisions of Article 4632, Vernon's Ann.Civ.St., the responsibility rests upon this court to determine for itself whether the evidence is full and satisfactory, and of a nature to justify and support the divorce granted appellee. Burns v. Burns, Tex.Civ.App., 76 S.W.2d 821, 823. If the evidence in our judgment is not full and satisfactory, then the judgment granting the divorce is without support. Yosko v. Yosko, Tex.Civ.App., 97 S.W.2d 1023. In this case the court found that the harsh and cruel treatment testified to by appellee "rendered their further living together insupportable." On the evidence, this fact conclusion should not be disturbed. This young woman was compelled to listen to the stories of her husband's relations with other women, knowing that, from his meager wage as a truck driver, he was giving to these women a part of his wage; so much that he was compelled to reduce her allowance from $10 per week, then to $8 per week, and then to $6 per week.

■ True, appellee's testimony was not corroborated and the general rule is (Lawson v. Lawson, Tex.Civ.App., 293 S.W. 336, 337) that a divorce should not be granted upon the uncorroborated testimony of the complaining party. But in this case appellant was on the witness stand and did not controvert the testimony of his wife. He heard her testimony charging him with improper conduct with the other women; that he was taking his wage and giving it to other women; that he brought one of his women down to appellee's home to see the baby.

Appellant's exceptions to the petition become immaterial. Appellee's allegations of misconduct supports the evidence, and the evidence supports the court's conclusions of fact, and the conclusions of fact support the judgment.

The judgment of the lower court is in all things affirmed.