Lillie VALDEZ, Appellant,

v.

Olga RAMIREZ and Tomas
Valdez, Appellees.

No. 15790.

Court of Civil Appeals of Texas,
San Antonio.

Nov. 2, 1977.

Rehearing Denied Nov. 30, 1977.

James M. Heidelberg, San Antonio, for
appellant.

Kirk Patterson, Mitchell, Stewart &
Hemmi, San Antonio, for appellees.

KLINGEMAN, Justice.

This suit involves a division of retirement
benefits under the U.S. Civil Service Retire-
ment Act, 5 U.S.C.A. § 8331, *et seq.* (1967).
Lillie Valdez appeals from a judgment in
the District Court of Bexar County, Texas
awarding appellees, Olga Ramirez and To-
mas Valdez, Jr., the heirs-at-law of Tomas
M. Valdez, Sr., deceased, approximately a
one-half interest in civil service retirement
benefits payable to Lillie Valdez after her
retirement from civil service employment.

Lillie Valdez began working for civil ser-
vice shortly prior to her marriage to Tomas
M. Valdez, Sr., and at the time of her
retirement had worked 352 months. For
340 of these months she was married to
Tomas M. Valdez. Tomas M. Valdez, Sr.
died intestate. Lillie Valdez was not the
natural mother of appellees and appellees
were children of Valdez, Sr. by a prior
marriage. The District Court entered judg-
ment October 14, 1976 ordering appellant
(1) to pay appellees one-half of $340/352$ of the
retirement benefits received up to that
date; (2) to pay appellees one-half of $340/352$
of the retirement benefits ·to be received
after October 14, 1976. The trial court

made extensive findings of fact and conclusions of law.[1]

Appellant asserted in the trial court and here maintains that: (1) the retirement pay is a defeasible interest, contingent upon the lives of Lillie Valdez and Tomas M. Valdez, Sr., and the death of Valdez, Sr. terminated any interest that he or his children had with respect to retirement pay; (2) appellees are not entitled to any of the retirement pay because federal statutes provide these retirement benefits are not assignable or subject to legal process; (3) at the time of her retirement Lillie elected to provide survivorship benefits to her husband, which constituted a partition of any community interests that her husband might have had with regard to retirement benefits. Lillie was required to take a reduced annuity in consideration for providing her husband with retirement benefits and, consequently, such election constituted a partition of the community interest in the retirement benefits.

On this appeal appellant asserts three points of error:

1. The interest, if any, of Valdez Sr. in the U.S. Civil Service Retirement benefits did not constitute a property or interest subject to alienation by will or by the State intestate succession laws.

2. The trial court award to the adult children of the deceased spouse by a former marriage contravened the purpose and intent of the federal law establishing civil service retirement benefits.

3. Such retirement benefits are not subject to assignments or legal process by express provision of federal law and, there-

---

1. Such findings of fact and conclusions of law may be summarized as follows:
FINDINGS OF FACT
(1) Appellant was employed by the U.S. Civil Service from January 1942 to May 1971, when she retired and began receiving monthly retirement benefits.
(2) Lillie Valdez was married to Tomas M. Valdez, Sr. from January 1943 until November 1973, when he died.
(3) The right to receive such retirement benefits accrued during the marriage of Lillie Valdez and Valdez, Sr., and some retirement benefits were paid during the marriage and prior to the death of Valdez, Sr.
(4) Valdez, Sr. died on November 18, 1973, without leaving a will.
(5) Appellees are the only children of Valdez, Sr., and are the sole heirs-at-law of his half of the community estate.
(6) Lillie Valdez is the surviving spouse of Valdez, Sr., but she is not the natural mother of appellees, and at no time did she provide a home for appellees.
(7) During the marriage of Lillie Valdez and Valdez, Sr., Lillie Valdez accepted the benefits of community property created through the labor and investments of Valdez, Sr., and upon the death of Valdez, Sr., she accepted the benefits of approximately one-half of the value of the community property of Valdez, Sr. and Lillie Valdez, which community estate was valued at $104,525.46. This sum does not include any portion of the civil service retirement benefits.
(8) Lillie Valdez has refused to pay or share with appellees any portion of the retirement benefits earned by her during her marriage to Valdez, Sr., although 340/352 of such retirement benefits were earned during the marriage of Lillie Valdez and Valdez, Sr.
(9) Since December 1974 to the date of entry of judgment, Lillie Valdez has received civil service retirement benefits in the sum of $11,909.00.
(10) Lillie Valdez started receiving her retirement benefits approximately July 1971 and all of Lillie's retirement contributions to the U.S. Civil Service Commission had been exhausted prior to the death of Valdez, Sr. The retirement benefits now being received are direct contributions from the government and are taxable.
(11) No portion of the retirement benefits received by Lillie since the death of Valdez, Sr. have been paid to appellees.
CONCLUSIONS OF LAW
(1) The right to the civil service retirement benefits vested during the marriage of Lillie Valdez and Valdez, Sr., prior to the death of Valdez, Sr.
(2) 340/352 of each civil service retirement benefit received and to be received by appellant is community property earned during the marriage of Valdez, Sr. and Lillie Valdez.
(3) Valdez, Sr. died intestate and appellees are the children of Valdez, Sr. and the sole heirs of that portion of the community estate owned by Valdez, Sr.
(4) Appellees are entitled to receive one-half of 340/352 of the civil service retirement benefits received by appellant if, when, and as received by appellant, including one-half of 340/352 of all retirement benefits received from and after December 1, 1974 to the date of entry of judgment and one-half of 340/352 of all civil service retirement benefits received by appellant thereafter.

fore, any state law regarding distribution of annuity is preempted.

This appears to be a case of first impression in this State in the type of fact situation here involved. There are numerous cases involving a division of retirement benefits in divorce actions, but the case before us involves a division of retirement benefits under our probate or intestate succession laws.

§ 45, Tex.Prob. Code Ann. (1956), provides in effect that upon dissolution of the marriage relation by death, all property of the husband and wife shall go to the survivor, if there be no child or children of the deceased or their descendants; but if there be a child or children of the deceased, or descendants then the survivor shall be entitled to one-half of the property and the other one-half shall pass to said child or children of the deceased.

We shall discuss appellant's contentions separately.

## I

Appellant first contends that the interest of Tomas M. Valdez, Sr. in the U.S. Civil Service Retirement benefits did not constitute a property or interest subject to alienation by will or by the State and intestate succession laws. At the outset, appellant and appellees disagree both as to the nature of such retirement benefits and as to which portion of the U.S. Civil Service Retirement Act is applicable. Appellant refers to the payments as an annuity and in particular relies strongly on the provision of § 8341, which sets forth those individuals who may be designated as survivor annuity beneficiaries in the event of the death of the federal employee annuitant. (Appellant maintains the only interest Valdez, Sr. may have had with regard to Lillie's retirement annuity, was extinguished by his death.)

It is to be remembered that Lillie Valdez was living at the time of the death of Valdez, Sr., and is still living.

It is appellees' contention that the benefits here involved are retirement benefits payable under §§ 8332–8336 of the U.S.

Civil Service Retirement Act. It is clear from the trial court's findings of fact and conclusions of law that the trial court regarded the benefits as retirement benefits, and as an earned property right.

§ 5.01, Tex. Family Code Ann. (1975), provides that community property consists of property, other than separate property, acquired by either spouse during their marriage.

The basic question here is whether or not the retirement benefits here involved are community property. There are a number of Texas decisions passing on and discussing the question as to whether retirement benefits are community property in this State. These decisions basically arise out of divorce actions. In the recent case of *Cearley v. Cearley,* 544 S.W.2d 661 (Tex. 1976), the trial court granted the wife a fractional interest in future military retirement benefits, if, as, and when received by the husband. The court of civil appeals reversed because the husband had not quite reached the 20 years required for the benefits to become vested. The Supreme Court reversed the court of civil appeals and held that rights in retirement programs, prior to accrual and maturity, constituted a contingent interest in property and a community asset subject to consideration along with other property in the division of the estate. In such case, the Supreme Court stated:

Section 5.01 of the Family Code provides that community property consists of the property, other than separate property, acquired by either spouse during marriage. . . . Despite an earlier view that retirement and pension plans were gifts bestowed by benevolent employers on retiring employees, they are now regarded as a mode of employee compensation earned during a given period of employment. . . .

It is now well established that matured private retirement, annuity, and pension benefits earned by either spouse during the marital relationship are part of the community estate and thus subject to division upon dissolution of the marriage. . . .

The same characterization of community property was first given to military retirement benefits by this court in *Busby v. Busby,* 457 S.W.2d 551 (Tex.1970)

. . . . .

The latest expression by the Supreme Court is *Taggart v. Taggart,* 552 S.W.2d 422 (Tex.1977), which involved a partition of military retirement benefits that were not divided when the parties were divorced. The Supreme Court held that *Cearley, supra,* controlled such case also, and that the wife owned as her part of the community estate a share in the contingent right to military benefits even though the right had not matured at the time of the divorce.[2]

Appellant also argues that the U.S. Civil Service Retirement benefits are in the nature of a gratuity granted by the federal government in appreciation for faithful services by a federal employee, and cites in support thereof *Berkey v. United States,* 176 Ct.Cl. 1, 361 F.2d 983 (1966). We do not regard this argument as persuasive. Our Supreme Court, in *Cearley, supra,* rejected this gift theory, citing with approval the following language from *Lee v. Lee,* 112 Tex. 392, 247 S.W. 828 at 833 (1923):

"It was in no sense a donation to the employé [sic] for individual merit, but was manifestly additional compensation for faithful and continuous service. It was as much a fruit of his labors as his regular wages or salary. It was in the strictest sense a 'gain' added to the common acquests of the marital partnership, as the direct result and fruit of his labor and services."

Appellant also relies on *McJunkin v. Estate of McJunkin,* 492 S.W.2d 278 (Tex.Civ. App.—Dallas 1973, writ ref'd n.r.e.); Allen v. Allen, 363 S.W.2d 312 (Tex.Civ.App.— Houston 1962, no writ); *Buehler v. Buehler,* 323 S.W.2d 67 (Tex.Civ.App.—Texarkana 1959, writ ref'd n.r.e.). In our opinion, these cases are distinguishable and are not here controlling.

*Herring v. Blakeley,* 385 S.W.2d 843 (Tex. 1965), is more in point. This case involved an annuity contract under which James Herring, an employee of Marathon, was entitled to a retirement annuity and certain death benefits. James had the unrestricted right to designate beneficiaries to receive the death benefits. James and Ellen were married during the course of James' employment at Marathon, but in 1960 they were divorced. At such time, James changed the death benefit from Ellen to Blakeley. James died ten months after the divorce and the question presented was who was entitled to the death benefits. The case did not involve retirement benefits. The Supreme Court held that James' interest in the plan was community property, and that at the date of the divorce Ellen was entitled to one-half of the value of the plan; pointing out that the plan came into existence during the marriage and contributions were made during the marriage.

## II

■ Appellant next contends that the award to appellees of an interest in appellant's federal retirement benefits contravened the purpose and intent of the federal law establishing the U.S. Civil Service Retirement program. She argues that the statute clearly designates persons entitled to receive employment benefits and that appellees are not included in such designation, and that to allow a "non-designated" individual to indirectly receive benefits would defeat the purpose of the Act. She asserts that the real purpose of such Retirement Act is to insure that when an employee leaves the federal service, he or she will continue to have an income as security for self and family; that it does not create an estate for the employee. In support thereof

2. There are a series of cases about retirement benefits, which include *Busby v. Busby,* 457 S.W.2d 551 (Tex.1970); *Ables v. Ables,* 540 S.W.2d 769 (Tex.Civ.App.—Waco 1976, no writ); *Freeman v. Freeman,* 497 S.W.2d 97 (Tex.Civ.App.—Houston [14th Dist.] 1973, no writ); *Miser v. Miser,* 475 S.W.2d 597 (Tex.Civ. App.—Dallas 1971, writ dism'd); *Kirkham v. Kirkham,* 335 S.W.2d 393 (Tex.Civ.App.—San Antonio 1960, no writ); *Webster v. Webster,* 442 S.W.2d 786 (Tex.Civ.App.—San Antonio 1969, no writ); *Mora v. Mora,* 429 S.W.2d 660 (Tex.Civ.App.—San Antonio 1968, writ dism'd).

appellant relies heavily on *Free v. Bland,* 369 U.S. 663, 82 S.Ct. 1089, 8 L.Ed.2d 180 (1962) and *Wissner v. Wissner,* 338 U.S. 655, 70 S.Ct. 398, 94 L.Ed. 424 (1950). *Free v. Bland* involved United States savings bonds which were issued to spouses living in Texas, designated as issuees, "Mr. or Mrs." Free. The wife died and the husband claimed ownership based on a Treasury Regulation that provided "the survivor will be recognized as the sole and absolute owner." A son of a deceased wife by a previous marriage claimed a one-half interest in the bonds under Texas law. The Texas courts held in favor of the son. The United States Supreme Court reversed, stating that the relative importance to the State of its own law is not material when there is a conflict with a valid federal law and that the federal law must prevail. The Court also pointed out that the State law interfered directly with a legitimate exercise of the power of the federal government to borrow money.

In *Wissner, supra,* the decedent named his mother as the beneficiary of his National Service Life Insurance policy, and the decedent's widow brought suit for one-half of the proceeds, claiming that under State community property law this was what she was entitled to. The California court held in favor of the widow, but the Supreme Court reversed, stating that Congress had spoken with force and clarity in directing that the proceeds belong to the named beneficiary and no other.

We do not regard the Texas community property laws as materially conflicting with the U.S. Civil Service Retirement Act. We find no provision of such Act specifically or directly conflicting with Texas law. In this connection, military retirement benefits are also payable to certain specific individuals, but our courts do not hold that our community property laws conflict or interfere with the Military Retirement Act.[3]

See Comment, 50 Texas L.Rev. 334 at 342 (1972), wherein it is stated:

If the assumption that the community usually may claim as an interest in retirement benefits of the employee husband is correct, one-half the value of the retirement benefits in which the community has an interest should be included in the wife's gross estate. The estate of a wife who dies before the right to retirement benefits has vested holds no claim to any benefits. If she dies after the right has vested, however, her interest in the benefits must be considered. Federal estate tax law requires that the gross estate include the value of all property to the extent that the decedent had an interest at the time of death. When the vested property right in retirement benefits is community property, the wife's gross estate reasonably should include one-half the value of that right. The language of the Texas inheritance tax statute, which imposes a tax on "all property" passed by the decedent, also indicates that the wife's interest in her employee husband's retirement benefits should be taxed at her death.

■ Appellant's last contention is that the trial court's judgment was erroneous because such retirement benefits are not subject to assignment or legal process by express provisions of federal law.

The Civil Service Retirement Act contains the following provision relating to exemptions of retirement benefits under the statute, 5 U.S.C.A. § 8346(a), as amended:

(a) The money mentioned by this subchapter is not assignable, either in law or equity, except under the provisions of

---

**3.** An interesting case in this connection is *Dominey v. Dominey,* 481 S.W.2d 473 (Tex.Civ. App.—El Paso 1972, no writ), *cert. denied,* 409 U.S. 1028, 93 S.Ct. 462, 34 L.Ed.2d 321, which involved disability pay received by a sailor in which a wife claimed an interest. The court held for the wife and an issue presented in the case was whether Texas' marital property laws conflicted with the U.S. law. The husband contended that the Texas law, which would include entitlement to Navy Disability Retirement Pay and Navy Retirement Pay as marital property subject to division between spouses on death or divorce, conflicted with U.S. law. The court held otherwise, stating that this issue had been previously disposed of by the Texas Supreme Court, and that the nature of the retirement is not so spelled out as to dictate who is to receive them and remove them from control by the Texas courts.

section 8345(g) of this title, or subject to execution, levy, attachment, garnishment, or other legal process, except as otherwise may be provided by Federal laws.

The controlling question here is whether appellees receive their interest by assignment, execution, levy, attachment, garnishment, or any other legal process. There are a number of Texas cases that are analogous. *Aetna Life Insurance Co. v. Creel,* 390 S.W.2d 522 (Tex.Civ.App.—Houston 1965, writ ref'd), involved a "non-assignment" clause in an annuity, which clause provided that annuity could not be assigned without the written consent of the employer, and that the benefits were exempt from the claims of creditors to the maximum extent permitted by law. The Texas Insurance Code also exempts insurance benefits and annuities from seizure under process of creditors of the insured or of the beneficiary, either before or after the benefits are paid. The Houston court held that neither the provision of the annuity contract or of the insurance code prevented the trial court from making a division of the estate in a divorce suit and from awarding the annuity to the wife.

This Court, in *Webster v. Webster,* 442 S.W.2d 786 (Tex.Civ.App.—San Antonio 1969, no writ), held the husband's military retirement benefits to be in part community property, and awarded the wife a part of such retirement benefits and pointed out that no part of the benefits were assigned or transferred to the wife, and that there was no violation of any federal regulation.

A recent law review article, Dutton, *The Wife's Community Interest in Her Husband's Qualified Pension or Profit-Sharing Plan,* 50 Texas L.Rev. 334 at 345–346 (1972), said:

> In *Webster v. Webster* . . . the court awarded the wife one-half of the community interest in the military retirement benefits, holding that because that portion of the benefits was owned by the wife, no part payments were assigned or transferred. The wife could claim her interest in the benefits when the husband retired and the benefits became payable.

The IRS also considers retirement pay for members of the armed forces deferred compensation for services, which is an earned property right. The separate or community character of the benefits is governed by applicable state law. Because in Texas the retirement benefits are community property, the inclusion of the value of the wife's share of the benefits in her gross estate need not be considered an assignment. If the community had an interest in the benefits when earned and the wife retains a vested property right in the benefits while alive, no reason appears for excluding the benefits from her estate at her death. There is no conflict with federal law. The wife actually owned a property interest in the benefits at the time of her death and it is, therefore, untenable to consider as an assignment the inclusion of that interest in her estate.

A federal "non-assignment" statute almost exactly like the one before us was considered by the court in *Dillard v. Dillard,* 341 S.W.2d 668, 678 (Tex.Civ.App.—Austin 1960, writ ref'd n.r.e.). 38 U.S.C.A. § 3101, provides that benefits due under any law administered by the Veterans Administration shall not be assignable and shall not be liable for attachment, levy, or seizure by or under any legal or equitable process whatsoever. The court found no conflict between this statutory language and the power of the divorce court to set aside a portion of the Veterans Administration's disability pension for child support, stating that the statutory exemption was "restricted to processes brought by creditors."

We find no conflict between the language in the "non-assignment" statute here involved and the judgment herein, recognizing ownership under the Texas community property law. Appellees take their interest by ownership, not assignment.

We have concluded that (1) the retirement benefits involved here were the community property of appellant and her husband, Tomas M. Valdez, Sr.; (2) the Texas community property laws do not so conflict or interfere with the provisions of the U.S.

Civil Service Retirement Act as to prevent the retirement benefits here involved from being a part of the community estate of appellant and Tomas M. Valdez, Sr.; and (3) the trial court's award to appellees of an interest in retirement benefits here involved is not in contravention of the "non-assignment" provisions found in the U.S. Civil Service Retirement Act.

The judgment of the trial court is affirmed.